**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **DEBORAH PETERSON,**<br><br>Plaintiff,<br><br>v.<br><br>**THE LINCOLN NATIONAL LIFE**<br>**INSURANCE COMPANY,**<br><br>Defendant. | Case No.  4:23-CV-40097-MRG |

**GUZMAN, D.J.**

**MEMORANDUM & ORDER ON PLAINTIFF'S MOTION FOR PARTIAL**
**SUMMARY JUDGMENT [ECF No. 29] AND DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT [ECF No. 32]**

**I.    INTRODUCTION**

This is a long-term disability ("LTD") insurance benefits denial case.  Plaintiff-plan participant Deborah Peterson has sued Defendant-insurance carrier The Lincoln National Life Insurance Company alleging various state-law claims arising from a failure to pay LTD benefits under an employee welfare benefits plan administered by her employer, non-party Notre Dame Health Care Center, Inc. ("NDHCCI").

Before the Court are the parties' cross-motions for summary judgment.  [ECF No. 29; ECF No. 32].  At the moment, the heart of the dispute is whether NDHCCI's

1

benefits plan is governed by ERISA[1] or if, conversely, it is a "church plan" and thus exempt from the statute's requirements.

After a careful review of the facts and an exercise in statutory interpretation, the Court ultimately concludes that NDHCCI's benefits plan is ***not*** a church plan because it was neither (a) established or maintained by a church or association of churches nor (b) is it maintained by a principal-purpose organization. Therefore, Roberts' state law claims are preempted by ERISA. Accordingly, Plaintiff's claims are **<u>DISMISSED WITHOUT PREJUDICE</u>** to Plaintiff's ability to file a new action asserting claims under ERISA.

## II.    <u>BACKGROUND</u>

### a. <u>The Facts[2]</u>

### i. <u>NDHCCI</u>

Plaintiff served as a Coordinator of Rehabilitation Services at non-party NDHCCI until October 20, 2020, when a disability allegedly required her to cease working. [ECF No. 10 at 4–5]. NDHCCI is a civil organization organized in the Commonwealth of Massachusetts in 1990. [ECF No. 35-1]. According to its Articles of Organization, its purpose is to:

> To establish, maintain, own and operate health care facilities, including nursing homes, to provide and render, and to employ others to provide

---

[1] "ERISA" refers to the Employee Retirement Income Security Act of 1974, a federal statute. As a general matter, ERISA "obligates private employers offering pension plans to adhere to an array of rules designed to ensure plan solvency and protect plan participants." <u>Advocate Health Care Network v. Stapleton</u>, 581 U.S. 468, 472 (2017) (citations omitted).

[2] The following facts are undisputed unless otherwise noted.

and render, medical, minor surgical, custodial and other health—related services as permitted by the law of the Commonwealth of Massachusetts; (b) to do any and all other acts which are necessary, incidental or useful to the establishment and operation of an organization for the foregoing purposes and related to the maintenance and delivery of high-quality health care services; and (c) to engage in the foregoing activities while adhering to applicable philosophy and tenets of the Roman Catholic Church and the Sisters of Notre Dame De Namur.

[Id.]

In practice, NDHCCI has repeatedly stated in annual Internal Revenue Service ("IRS") filings that its mission and/or most significant activity is to "provide quality nursing and hospice care for the elderly and poor residents of the community." [ECF No. 35-2 at 2–5]. According to its by-laws, the "Members" of the organization are, *ex officio*, the moderator and the leadership team of the Sisters of Notre Dame de Namur's East-West Province. [ECF No. 30-5 at 5]. Further, there must be between six and eighteen "Directors," at least six of whom must be Sisters of Notre Dame de Namur. [Id. at 7]. In terms of "Officers," the organization must have a president, a treasurer, and a clerk. [Id. at 10].

NDHCCI is a 501(c)(3) not-for-profit corporation, and it is included in The Official Catholic Directory, which lists Roman Catholic institutions in the United States. [ECF No. 10 at 3–4].

## ii. <u>The Plan and the Group Policy</u>

NDHCCI maintains a suite of employee benefits plans, including health and dental benefits, long-term disability ("LTD") benefits, short-term disability benefits, accidental death and dismemberment benefits, as well as life insurance benefits. E.g., [ECF No. 43 at 2]. According to its by-laws, NDHCCI established its LTD

benefits plan (the "Plan") "to assist employees in their efforts to financially take care of themselves and their families if rendered temporarily disabled." [Id.]

To fund the Plan, NDHCCI purchased a group insurance policy from Defendant -- specifically Policy No. 10226010 (the "Group Policy"). [ECF No. 35-6; ECF No. 35-7]. The Group Policy's formal name is "Group Long Term Disability Insurance For Employees of Notre Dame Health Care Center, Inc." [See ECF No. 43 at 3–4]. Under the Group Policy, NDHCCI is the policyholder and pays the premium for its employees' LTD benefits coverage. [See id.] Notably, the policy application that NDHCCI submitted to Defendant in December 2012 shows that NDHCCI checked boxes indicating its understanding that the Plan *was subject to ERISA* and that it was responsible for providing summary plan descriptions to its employees. [ECF No. 35-3 at 5].[3] Defendant contends that NDHCCI requested descriptions of the Plan that it could provide to its employees, which it later did provide. [E.g., ECF No. 35-7].[4] Further, NDHCCI designated itself as the Plan Administrator of the Plan. [Id.][5]

The Group Policy defined "Total Disability" or "Totally Disabled" as follows:

---

[3] Plaintiff admits that this document speaks for itself but notes that she does not know what NDHCCI understood this form to mean when it completed it and further stated that this fact should not have any bearing on the dispute. [ECF No. 43 at 3].

[4] Plaintiff states that she is unaware of any requests that NDHCCI might have made of Defendant but does acknowledges that Defendant did issue a description of the Group Policy. [Id.]

[5] Specifically, the description that Defendant provided to NDHCCI explained that "[t]he [Group] Plan is administered directly by the Plan Administrator with benefits provided in accordance with provisions of the group insurance policy issued by [Defendant]." [Id. at 4].

1.) During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.

2.) After the Own Occupation Period, it means that due to an injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any Gainful Occupation.

[ECF No. 10 at 4–5].

### iii.  Plaintiff and Her Claim

Plaintiff has a significant medical history of scoliosis and kyphosis dating back to her childhood.  [Id. at 5].  In September 2014, Plaintiff underwent a 13-level spinal fusion.  [Id.]  Complications from that surgery required a revision surgery in October 2015.  [Id.]  Plaintiff was hired by NDHCCI on or about July 17, 2017, [ECF No. 35-8 at 2], and she participated in the Plan while she was an employee, [ECF No. 43 at 4].

Her disease allegedly progressed during her employment, and this required short stints of disability leave.  [ECF No. 10 at 5].  Over time, however, Plaintiff allegedly became unable to fulfill the "Main Duties" of her occupation and she ceased work on October 20, 2020.  [Id.]  Plaintiff timely submitted a claim to Defendant; alleging that she was "Totally Disabled" for purposes of the Group Policy.  [ECF No. 43 at 4–5].

### iv.  Defendant Denies the Claim; Plaintiff Pursues Internal Appeals

On July 12, 2021, Defendant notified Plaintiff that it had finished its claim review and had determined that no LTD benefits were payable since she was not Totally Disabled under the Group Plan's definition.  [ECF No. 10 at 6].  On January

5

3, 2022, Plaintiff appealed the claim denial.  [Id.]  On March 8, 2022, Defendant informed Plaintiff that was upholding its claim denial.  [Id.]  On November 18, 2022, Plaintiff sent Defendant a Chapter 93A[6] demand letter which Defendant construed as a request for second level internal appeal since it considered the Plan to be covered by ERISA.  [Id.]  A second level internal appeal followed, and Defendant issued its final decision denying the claim on February 28, 2023.  [Id.]  Plaintiff then initiated the instant lawsuit.

### b.  Procedural History

Plaintiff originally filed this suit in Massachusetts Superior Court.  [ECF No. 1-1].  Plaintiff's original complaint, [id.], and the operative, Amended Complaint, [ECF No. 10], contain state law claims that, among other things, claim entitlement to benefits under the Plan.  [See e.g., ECF No. 10 at 12 (Plaintiff demanding, among other things, "judgment against Defendant…for all contractual benefits, pre-judgment interest, paid premiums since the date of disability…")].  Specifically, Plaintiff's Amended Complaint contains the following pending claims, each of which purportedly arise under Massachusetts state law:

| Count # | Cause of Action |
|---------|-----------------|
| Count I | Breach of Contract |
| Count II | Violation of M.G.L. c. 93A, and M.G.L. c §176D (9) (a), (f), and (g) |
| Count III | Breach of Implied Covenant of Good Faith and Fair Dealing |

---

[6] See M.G.L. c. 93A § 9(3).

Defendant removed the case; arguing that this Court has federal question subject matter jurisdiction (because, in its view, this is an ERISA case)[7] and that, alternatively, even if state law applies, the Court has diversity jurisdiction over the action.  [ECF No. 1 at 2–5].

The parties have filed cross-motions for summary judgment; both of which essentially ask this Court to rule on the same question (albeit with different answers): is the Plan a "church plan" such that it is not subject to ERISA?  See [ECF No. 29]; [ECF No. 32].  The parties extensively briefed the issue, and the Court held a hearing on the cross-motions.  [ECF No. 50].  This matter is now ripe for adjudication.

## III.  LEGAL STANDARDS

### a.  Summary Judgment, Generally

Summary judgment is appropriate if the moving party shows that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  An issue is "genuine" when a reasonable factfinder could resolve it in favor of the nonmoving party.  Morris v. Gov't Dev. Bank, 27 F.3d 746, 748 (1st Cir. 1994).  A fact is "material" when it may affect the outcome of the suit.  Id.

At the summary judgment stage, the Court must view the record in the light most favorable to the non-moving party and must "indulge all reasonable inferences" in their favor.  Martins v. Vt. Mut. Ins. Co., 662 F. Supp. 3d 55, 64 (D. Mass. 2023) (citing O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993)).  In the first instance,

---

[7] See infra.

the moving party "bears the burden of demonstrating the absence of a genuine issue of material fact. . . ." Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000) (citations omitted). If a properly supported summary judgment motion is presented, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial," and may not simply "rest upon mere allegation or denials of [their] pleading," but must instead "present affirmative evidence." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 256–57(1986). "If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate." Walsh v. Town of Lakeville, 431 F. Supp. 2d 134, 143 (D. Mass. 2006).

"Neither party may rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." Magee v. United States, 121 F.3d 1, 3 (1st Cir. 1997).

### b. Cross-Motions for Summary Judgment

As the First Circuit has explained, "[c]ross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [courts] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Adria Int'l Grp., Inc. v. Ferre Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001) (citation omitted). When facing cross-motions for summary judgment, "the court must consider each motion separately, drawing inferences against each movant

in turn." <u>Reich v. John Alden Life Ins. Co.</u>, 126 F.3d 1, 6 (1st Cir. 1997) (citation omitted).

### c. **Statutory Interpretation, Generally**

When engaging in statutory interpretation, a court's inquiry "begins with the statutory text, and ends there as well if the text is unambiguous." <u>BedRoc Ltd. v. United States</u>, 541 U.S. 176, 183 (2004) (citations omitted). A court must read the text "according to its plain meaning at the of enactment.'" <u>United States v. Hassan Abbas</u>, 100 F.4th 267, 283 (1st Cir. 2024) (citation omitted); <u>Tanzin v. Tanvir</u>, 592 U.S. 43, 48 (2020). Further, a court must assume, "absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry 'their ordinary, contemporary, common meaning.'" <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship</u>, 507 U.S. 380, 388 (1993) (citation omitted). Indeed, a reviewing court's "inquiry into the meaning of [a] statute's text ceases when the statutory language is unambiguous and the statutory scheme is coherent and consistent." <u>United States v. Hassan Abbas</u>, 100 F.4th 267, 283 (1st Cir. 2024) (citations omitted).

Canons of construction only apply in cases of textual ambiguity. <u>See e.g.,</u> <u>Littlefield v. Mashpee Wampanoag Indian Tribe</u>, 951 F.3d 30, 40 (1st Cir. 2020) (explaining that, "[u]nder the commands of the Supreme Court, a statute that 'does not contain conflicting provisions or ambiguous language' does not 'require a narrowing construction or application of any other canon or interpretative tool'") (quoting <u>Barnhart v. Sigmon Coal Co.</u>, 534 U.S. 438, 461 (2002)). Textual ambiguity in a statute exists only if "it admits of more than one reasonable interpretation."

United States v. Godin, 534 F.3d 51, 56 (1st Cir. 2008) (citation omitted).  If a court finds a statute's text ambiguous, it may apply canons of construction and other interpretative tools, such as a review of legislative history.   See e.g., City of Providence v. Barr, 954 F.3d 23, 31-32 (1st Cir. 2020) (explaining that, "[o]ther tools of statutory interpretation, such as legislative history, customarily carry significant weight only when the text is ambiguous or its plain meaning leads to an absurd result") (citation omitted).

### d.  Statutory Interpretation in the ERISA Context

Since the undersigned must today interpret a portion of ERISA's text, prudence dictates briefly reviewing the general guidance for how to interpret this particular statute.   The Supreme Court has explained that ERISA is a "'comprehensive and reticulated statute,' which Congress adopted after careful study of private retirement pension plans."   Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 510 (1981) (citation omitted).  In fact, the Court has observed that ERISA was the end product of a "decade of congressional study" and that its "carefully crafted and detailed enforcement scheme provides 'strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" Mertens v. Hewitt Assocs., 508 U.S. 248, 251, 254 (1993) (citations omitted).

Relatedly, although a reviewing court must of course begin its inquiry with the statutory text, the court should not lose sight of the specific context in which the language-in-question is used as well as the broader context of the ERISA statute.  See

e.g., Castillo v. Metro. Life Ins. Co., 970 F.3d 1224, 1232 (9th Cir. 2020) (conducting a statutory interpretation analysis of a portion of ERISA's text and quoting Supreme Court precedent for the proposition that "[s]tatutory interpretation must account for both 'the specific context in which . . . language is used' and 'the broader context of the statute as a whole'") (citations omitted).  Notably, the Supreme Court has been "***especially 'reluctant to tamper*** with [the] enforcement scheme' embodied in the [ERISA] statute by extending remedies not specifically authorized by its text." Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 209 (2002) (emphasis added and citation omitted).

Finally, ERISA is properly understood as a "remedial" statute, and consistent with that purpose, should be "liberally construed ***in favor of protecting the participants*** in employee benefit plans." See, e.g., IUE AFL-CIO Pension Fund v. Barker & Williamson, Inc., 788 F.2d 118, 127 (3d Cir. 1986) (emphasis added).  A consequence of this is that "exemptions from ERISA coverage must be confined to their narrow purpose." See e.g., Alfa Laval, Inc. v. Nichols, 2007 U.S. Dist. LEXIS 23159, at *32 (E.D. Va. Mar. 29, 2007) (citation omitted).

## IV.  LEGAL LANDSCAPE

### a.  Determining the Existence of an ERISA-Governed Plan

The First Circuit has explained that determining whether a "given employee benefit or set of benefits is a plan properly governed by the strictures of ERISA requires a certain level of judicial versatility" and is a mixed question of law and fact. See e.g., Belanger v. Wyman-Gordon Co., 71 F.3d 451, 453 (1st Cir. 1995).  The Court

has further acknowledged that ERISA itself offers "scant guidance" as to what constitutes a "plan" but has observed that the Supreme Court has instructed courts to only find that an employee benefits plan is a plan subject to ERISA if "it involves the undertaking of continuing administrative and financial obligations by the employer to the behoof of employees or their beneficiaries." Id. (citing Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 12 (1987)). Indeed, the "existence of a plan turns on the nature and extent of an employer's benefit obligations." Belanger, 71 F.3d at 454.

There are two common ways to show that a benefits decision *falls outside* of ERISA's ambit: (1) demonstrating the applicability of the regulatory "safe harbor provision", see 29 C.F.R. § 2510.3-1(j)[8], and/or (2) showing that the plan-at-issue fails under the five-part "conventional tests" for determining whether ERISA governs. Gross v. Sun Life Assur. Co. of Can., 734 F.3d 1, 6 (1st Cir. 2013). As the Gross Court explained, an ERISA employee welfare benefit plan has five essential constituent parts:

> (1) a plan, fund or program (2) established or maintained (3) by an employer or by an employee organization, or by both (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits (5) to participants or their beneficiaries.

Id. (citations omitted). Finally, the Gross Court also reiterated the rule that the "crucial factor" in determining the existence of an ERISA-regulated plan "is whether

---

[8] This provision is not relevant here.

the purchase of the insurance policy constituted an expressed intention by the employer to provide benefits on a regular and long term basis." <u>Id.</u> (citations omitted).

### b. <u>ERISA's Purpose and Exclusive Cause of Action in Benefit Denial Cases</u>

ERISA "governs the rights and responsibilities of parties in relation to employee pension and welfare plans," and it "includes a cause of action for plan participants, and other beneficiaries, 'to recover benefits due to him [or her] under the terms of his [or her] plan.'" <u>Terry v. Bayer Corp.</u>, 145 F.3d 28, 34 (1st Cir. 1998) (first citing <u>New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.</u>, 514 U.S. 645, 650–51 (1995); then quoting 29 U.S.C. § 1132(a)(1)(B)). Claims challenging denials and terminations of ERISA-regulated employer-sponsored disability benefits must be brought under 29 U.S.C. § 1132(a)(1)(B). Indeed, as another Session of this Court has observed, in the context this statutory provision is "the exclusive remedy for rights guaranteed under ERISA" in the context of benefit denials. <u>Andrews-Clarke v. Lucent Techs., Inc.</u>, 157 F. Supp. 2d 93, 105 (D. Mass. 2001).

### c. <u>ERISA Preemption</u>

A consequence of ERISA providing the exclusive federal remedy for claimants who are denied benefits under an employee welfare plan is that state law claims purporting to seek similar relief may very well be preempted. <u>See e.g.</u>, <u>Green v. Corp. Grp. Sys.</u>, No. 95-1026, 1996 U.S. App. LEXIS 12186, at *11 (6th Cir. Apr. 12, 1996) (unpublished) (explaining that, "Congress's purpose in providing preemption of state law claims was to enable employee benefit plans to be administered in a uniform way

13

without being affected by divergent regulatory schemes in different states . . .”).

There are two forms of ERISA preemption.  As another Session of this Court

has recently explained,

> “The first is ***complete preemption*** under [ERISA] § 502(a)(1)(B). The
> Supreme Court has stated that ‘if an individual brings suit complaining
> of a denial of coverage for medical care, where the individual is entitled
> to such coverage only because of the terms of an ERISA-regulated
> employee benefit plan, and where no legal duty (state or federal)
> independent of ERISA or the plan terms is violated, then the suit falls
> ‘within the scope of’ ERISA § 502(a)(1)(B).’
>
> ***
>
> The second form is ***conflict preemption*** under [ERISA] §
> 514(a). Under § 514, ERISA’s provisions ‘shall supersede any and all
> State laws insofar as they may now or hereafter relate to any employee
> benefit plan.’ Although conflict preemption is an affirmative defense,
> ‘raising a colorable ERISA § 514 preemption defense is no basis for
> federal jurisdiction.’

<u>Tutungian v. Mass. Elec. Co.</u>, No. 24-10228-FDS, 2024 U.S. Dist. LEXIS 64527, at

*3 (D. Mass. Apr. 9, 2024) (emphasis added and citations omitted).[9]

Complete preemption under ERISA §502(a)(1)(B) is “[p]rincipally concerned

with jurisdiction,” and it allows “defendants to remove cases filed in state court even

when no federal cause of action is pleaded in the complaint.”  <u>Buiaroski v. State St.</u>

<u>Corp.</u>, No. 1:23-cv-12241-JEK, 2024 U.S. Dist. LEXIS 129557, at *5 (D. Mass. July

23, 2024) (citation omitted).  Conflict preemption is “more sweeping and is often

invoked as an affirmative defense to state law causes of action.”  <u>Id.</u> (citation omitted).

---

[9] When a court in this Circuit needs to determine if ERISA’s express preemption
mechanism applies, it must ask “two central questions: (1) whether the plan at issue
is an ‘employee benefit plan’ and (2) whether the cause of action ‘relates to’ this
employee benefit plan.”  <u>Hampers v. W.R. Grace & Co.</u>, 202 F.3d 44, 49 (1st Cir. 2000)
(citation omitted).

As another Judge in this District has explained, "conflict preemption does not provide a basis for federal jurisdiction and complete preemption does. This is because conflict preemption is a federal defense which, under the well-pleaded complaint rule, cannot give rise to removal jurisdiction." Flagg v. Ali-Med, Inc., 728 F. Supp. 2d 1, 5 (D. Mass. 2010) (citation omitted).  Said differently, a defendant *can* remove state law causes of action that are "within the scope of the civil enforcement provisions of § 502(a)" to federal court, Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 66 (1987), but *cannot* remove state law claims that are outside the scope of § 502(a), "even if [they are] preempted by § 514(a)" because such claims "are still governed by the well-pleaded complaint rule…," Dukes v. U.S. Healthcare, 57 F.3d 350, 355 (3d Cir. 1995) (citation omitted).

To determine if complete preemption applies, this Court must apply a two-part test. Aetna Health Inc. v. Davila, 542 U.S. 200, 210 (2004).  First, a defendant must establish that (1) the plaintiff "could have brought his claim under ERISA § 502(a)(1)(B)," (2) that there is "no other independent legal duty that is implicated by a defendant's actions…."  Id.  To determine if conflict preemption applies, Courts in this Circuit must ask "two central questions: (1) whether the plan at issue is an 'employee benefit plan' and (2) whether the cause of action 'relates to' this employee benefit plan." Hampers, 202 F.3d at 49 (citation omitted).

Here, Defendant argues that the state law claims contained in Counts I, II, and III are preempted under *both* forms of ERISA preemption.  [See e.g., ECF No. 33 at 6–7 (Defendant arguing that "[Plaintiff's] claims 'relate to' the Plan and are

15

expressly preempted under ERISA § 514(a)" and that "[b]ecause Peterson's [Amended] Complaint arises solely from the denial of benefits under the terms of the Plan, she 'could have brought her claim under ERISA § 502(a)(1)(B)'") (citations omitted)].

### d. <u>Church Plans</u>

Importantly, ERISA *expressly exempts* from its coverage certain plans that would otherwise meet its definition of an "employee benefit plan." <u>Scanlan v. Am. Airlines Grp., Inc.</u>, 384 F. Supp. 3d 520, 529 (E.D. Pa. 2019). One type of plan that is expressly exempt from ERISA is a "church plan." 29 U.S.C. § 1003(b)(2).

The statutory definition of "church plan" came about in two distinct phases. <u>See</u> <u>Stapleton</u>, 581 U.S. at 472. From ERISA's inception, "church plan" has meant:

- "a plan established and maintained . . . for its employees . . . by a church or by a convention or association of churches." §1002(33)(A).

Then, in 1980, as Justice Kagan explained in <u>Stapleton</u>'s majority opinion, "Congress amended the statute to expand that definition by deeming additional plans to fall within it." 581 U.S. at 472. Specifically, §1002(33)(C)(ii)(II) was added, which provides that "for purposes of the church-plan definition, an 'employee of a church' would include an employee of a church-affiliated organization . . . ." <u>Id.</u> (citing §1002(33)(C)(ii)(II)).

But Congress also added statutory language that is of particular importance in today's case. Specifically, it added the following provision:

- For purposes of this paragraph [...] A plan established and maintained for its employees . . . by a church or by a convention or association of churches ***includes*** a plan maintained by an ***organization*** . . . the

16

principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches.

§1002(33)(C)(i) (emphasis added).

As Justice Kagan explained in <u>Stapleton</u>'s majority opinion, the above-quoted provision contained in §1002(33)(C)(i) is "a mouthful for lawyers and non-lawyers alike," and so, "to digest it more easily, note that ***everything after the word 'organization'*** in the third line is just a (long-winded) description of a particular kind of church-associated entity—which this opinion will call a 'principal-purpose organization.'" 581 U.S. at 473. The main job of a principal purpose organization, the Court further explained, "is to fund or manage a benefit plan for the employees of churches or (per the 1980 amendment's other part) of church affiliates." <u>Id.</u>

As explained *supra*, the question of whether the Plan fits within the statutory definition of a church plan for purposes of ERISA is presently at the heart of this case and is at the heart of this opinion.

## V.    <u>ORDER OF OPERATIONS</u>

Before the Court reaches the Application section of this Opinion, it will provide a roadmap of its decisional analysis.

- **<u>Step One</u>: First, the Court will address the disputed and threshold question of which party bears the burden of showing that the Plan <u>is</u> or <u>is not</u> an ERISA-regulated benefits plan.**

- **<u>Step Two</u>: Second, the Court will decide whether the Plan is an *otherwise ERISA-governed* plan and, if so, will then engage in statutory interpretation to determine whether it fits within the statutory**

**definition of a church plan such that the Plan is *ultimately exempt* from ERISA.**

o **<u>Reasoning</u>**: Three prior ERISA decisions counsel tackling this question before reaching preemption-related issues.  <u>See e.g.</u>, <u>Morton v. Rocky Mt. Hosp. & Med. Servs.</u>, No. 2:23-cv-01320-GMN-DJA, 2024 U.S. Dist. LEXIS 91423, at *4 (D. Nev. May 21, 2024) (explaining at the motion to dismiss stage that, "[t]he Court will first address whether ERISA governs the Health Plan, ***and then whether*** Plaintiff's claims are completely preempted under Section 502(a)(1)(B) or expressly preempted under 514") (emphasis added); <u>Fluker v. Anderson</u>, No. 4:06-cv-3394, 2008 U.S. Dist. LEXIS 140441, at *10 (S.D. Tex. Aug. 25, 2008) (explaining at the summary judgment stage that before it could reach the "merits of Plaintiff's claims, the Court must address whether ERISA governs the Plan at issue, ***and, if so***, whether it preempts Plaintiff's state law causes of action") (emphasis added); <u>Bailey v. Cigna Ins. Co.</u>, No. 01-1115, 2001 U.S. Dist. LEXIS 24885, at *5 (W.D. La. Dec. 17, 2001) ("To ascertain whether the Baileys' claims are preempted by ERISA, the court must first determine whether the Plan itself is governed by ERISA. If the Plan is governed by ERISA, the focus shifts to whether preemption must apply to the Baileys' claims.")

• **<u>Step Three</u>: Third, if the Court finds that the church plan exemption does *not* apply to the Plan, it will address whether Plaintiff's state law claims are preempted.**

o **<u>Reasoning</u>**: Two prior ERISA decisions weigh in favor of addressing Section 502 concerns before reaching Section 514 concerns.  <u>See e.g.</u>, <u>Royal Heritage Home, LLC v. Bluestone</u>, No. 20-4157, 2021 U.S. Dist. LEXIS 155079, at *6 (D.N.J. Aug. 17, 2021) ("the Court must first determine whether the Complaint is completely preempted under § 502 before addressing any of Defendant's arguments under § 514"); <u>Morton</u>, 2024 U.S. Dist. LEXIS 91423, at *9–15 (resolving § 502(a)(1)(B)-related preemption issues before reaching § 514(a) arguments.).

• **<u>Step Four</u>: Finally, if the Court finds that Plaintiff's claims are preempted, it will determine whether they must be dismissed -- and if so, whether this dismissal should be with or without prejudice.**

• **<u>Reasoning</u>**: If a court finds that a plaintiff's state law claims are preempted by ERISA, then it may dismiss those counts.  <u>Cf.</u>, <u>Lee v. Sheet Metal Workers' Nat'l Pension Fund</u>, 697 F. Supp. 2d 781, 784 (E.D. Mich. 2010) ("If the court determines that certain counts of the plaintiff's complaint are preempted by ERISA, it can dismiss such counts under Rule 12(b)(6)") (citation omitted).

The Court will now begin resolving these issues according to this roadmap.

## VI.    <u>APPLICATION</u>

### a.    <u>Step One: Who Bears the Burden?</u>

The first contested question is which party bears the burden of showing that their interpretation of the church plan question is correct.  Defendant contends that Plaintiff bears the burden of showing that the Plan falls within the "Church Plan" exemption.  [<u>E.g.</u>, ECF No. 33 at 8 ("Because Church Plans are an exception to ERISA's rule of general application, [Plaintiff] has the burden to prove that the Plan is a Church Plan, and is therefore exempt from ERISA.") (citations omitted)]. Plaintiff argues that "it makes the most sense for Defendant (who is the party seeking to remove and dismiss claims based on subject matter jurisdiction) to initially bear the burden of proof that ERISA applies."  [ECF No. 42 at 4].

For starters, the Court's research revealed that there is no binding authority on this precise question.  In terms of persuasive authority, the most instructive case is <u>Hall v. USAble Life</u>, 774 F. Supp. 2d 953 (E.D. Ark. 2011). In <u>Hall</u>, the Court grappled with this very question and surveyed prior case law before ultimately determining that:

> When a *complaint* seeks benefits under an ERISA plan, there is federal question jurisdiction. However, when a complaint seeks benefits under a church plan, there is no federal question. ***Thus, a defendant who removes the case has the burden to show federal question jurisdiction exists***, and that burden includes establishing that the plan is not a church plan.

774 F. Supp. 2d at 957 (emphasis added). [10]

---

[10] <u>See also</u>, <u>Roberts v. Life Ins. Co. of N. Am.</u>, No. 2:23-129-DCR, 2023 U.S. Dist.

This approach makes good sense and is in accord with the undisputed principle that *defendants claiming federal question jurisdiction* as the basis for removal must "make a 'colorable' showing that a basis for federal jurisdiction exists." Danca v. Private Health Care Sys., 185 F.3d 1, 4 (1st Cir. 1999) (citation omitted). Defendants are of course correct that "the *general rule* of statutory construction [is] that the burden of proving justification or exemption under a special exception to the prohibitions of a statute ***generally rests*** on one who claims its benefits . . . ." FTC v. Morton Salt Co., 334 U.S. 37, 44–45 (1948) (emphasis added). However, this Court concludes that this general rule should not be applied in this particular context.

Here, Plaintiff's original and Amended Complaint did not seek benefits under an ERISA plan, and these documents said nothing about the church plan exemption. [See ECF No. 1-1; ECF No. 10]. Indeed, the only reason that this case — and this issue — is presently before the Court is because Defendant removed the case in part based on its ERISA church plan argument. [ECF No. 1 at 2–3]. Accordingly, this Court finds that the burden most appropriately rests on Defendant to show that the Plan *is not* a church plan. See Hall, 774 F. Supp. 2d at 957.[11]

_____

LEXIS 226539, at *4–5 (E.D. Ky. Dec. 20, 2023) ("To determine whether ERISA completely preempts a state claim, ***the party seeking removal has the burden*** of showing that the plaintiff is complaining about a denial of benefits under the terms of an ERISA plan and that the plaintiff alleges the violation of a legal duty that is dependent on ERISA or an ERISA plan's terms") (emphasis added and citation omitted).

[11] The undersigned recognizes that other courts have come down differently on this issue but believes that its chosen approach is most appropriate under these circumstances. See e.g., Durham v. Prudential Ins. Co. of Am., 236 F. Supp. 3d 1140, 1153 (C.D. Cal. 2017) ("[T]he Court concludes that where the defendant asserts ERISA preemption as an affirmative defense, the plaintiff has the burden of pleading

**b.  Step Two: Is the Plan an Otherwise ERISA-Governed Plan?  If so, Does it Fall Within the Statutory Definition of a Church Plan?**

And now for the main event.  To decide whether the Plan is ultimately governed by or exempt from ERISA, the Court will proceed by (a) considering the undisputed facts surrounding the Plan to determine if it is an otherwise ERISA-governed employee welfare benefits plan, and if 'yes', will then (b) interpret the relevant statutory language in light of the parties' competing arguments to decide if the Plan fits within the definition of a church plan.  Accord Roberts, 2023 U.S. Dist. LEXIS 226539 at *6 (explaining in an analogous situation that "[t]he undersigned begins by considering the undisputed facts concerning [plaintiff's] insurance plan *and then* by examining the text of the church-plan exception") (emphasis added).

**i.  The Plan Is Clearly an Otherwise ERISA-Governed Employee Benefit Plan**

After careful review, the Court concludes that the Plan is *an otherwise ERISA-governed* employee welfare benefit plan.  The following relevant facts are undisputed:

- NDHCCI is an employer whose mission and/or most significant activity is to "provide quality nursing and hospice care for the elderly and poor residents of the community."  [ECF No. 35-2 at 2–5].

- NDHCCI established the Plan in order to "to assist employees in their efforts to financially take care of themselves and their families if rendered temporarily disabled."  [ECF No. 43 at 2].

- NDHCCI funds the Plan through the Group Policy that it purchased from Defendant [ECF No. 35-6]; [ECF No. 35-7].

---

and proving any applicable exemption under [ERISA].")

21

- NDHCCI serves as the Group Policy's policyholder and pays the premium for its employees' LTD benefits coverage.  <u>See</u> [ECF No. 43 at 3–4].

- NDHCCI designated itself as the Plan Administrator.  [ECF No. 35-7]

- When NDHCCI applied for coverage from Defendant in December 2012, one of its representatives checked boxes indicating its understanding that the Plan *was subject to ERISA* and that NDHCCI was responsible for providing summary plan descriptions to its employees.  [ECF No. 35-3 at 5].[12]

- Nothing in the record suggests the existence of a benefit committee or other organization that has a principal purpose or function of administering the Plan.

- Plaintiff was an NDHCCI employee, [ECF No. 35-8 at 2], and she participated in the Plan during her employment.  [ECF No. 43 at 4].

Applying the "five essential constituents" test cited by the First Circuit in <u>Gross</u>, cited *supra*, the Court easily concludes that the Plan is an otherwise ERISA-governed employee welfare benefit plan.  <u>See</u> 734 F.3d at 6.  First, it is certainly a "plan."  Second and third, it was established by an employer -- namely NDHCCI.  Fourth, NDHCCI's express purpose for establishing the Plan was to assist its employees in financially taking care of themselves and their families if rendered disabled.  [<u>See</u> ECF No. 43 at 2].[13]  Fifth and finally, NDHCCI offered the benefits provided by the Plan to its employees, including Plaintiff.  Moreover, the Court finds

---

[12] As noted *supra*, Plaintiff admits that this document speaks for itself but notes that she does not know how NDHCCI construed this form when it completed it and further stated that this fact should not have any bearing on the dispute in any case.  [ECF No. 43 at 3].

[13] The satisfaction of this factor is especially important in this Circuit.  <u>See e.g.</u>, <u>Wickman v. Nw. Nat'l Ins. Co.</u>, 908 F.2d 1077, 1083 (1st Cir. 1990) ("The crucial factor in determining if a 'plan' has been established is whether the purchase of the insurance policy constituted an expressed intention by the employer to provide benefits on a regular and long term basis.")

it significant that the NDHCCI representative that applied for insurance coverage from the Defendant *affirmatively acknowledged* that the Plan was subject to ERISA. [ECF No. 35-3 at 5].

Thus, when viewed through the reasonable person lens, <u>see</u> <u>Gross</u>, 734 F.3d at 6–7, the Court concludes from the surrounding and undisputed circumstances that the Plan is an otherwise ERISA-governed plan that will only be exempt from the statute if the church plan exemption applies, which is the next question that the Court must address.

### ii.  <u>The Statutory Text</u>

**(A)** ***The term "church plan" means a plan established and maintained (to the extent required in clause (ii) of subparagraph (B)) for its employees (or their beneficiaries) by a church or by a convention or association of churches which is exempt from tax under section 501 of the Internal Revenue Code of 1986 [26 USCS § 501].***

**(B)** The term "church plan" does not include a plan—

  (i)   which is established and maintained primarily for the benefit of employees (or their beneficiaries) of such church or convention or association of churches who are employed in connection with one or more unrelated trades or businesses (within the meaning of section 513 of the Internal Revenue Code of 1986 [26 USCS § 513]), or

  (ii)  if less than substantially all of the individuals included in the plan are individuals described in subparagraph (A) or in clause (ii) of subparagraph (C) (or their beneficiaries).

(C)  For purposes of this paragraph—

  *(i)*   ***A plan established and maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches includes a plan maintained by an organization, whether a civil law corporation or otherwise,***

23

***the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches.***

(ii) The term employee of a church or a convention or association of churches includes—

(I) a duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry, regardless of the source of his compensation;

(II) ***an employee of an organization, whether a civil law corporation or otherwise, which is exempt from tax under section 501 of the Internal Revenue Code of 1986 [26 USCS § 501] and which is controlled by or associated with a church or a convention or association of churches; and***

(III) an individual described in clause (v).

(iii) ***A church or a convention or association of churches which is exempt from tax under section 501 of the Internal Revenue Code of 1986 [26 USCS § 501] shall be deemed the employer of any individual included as an employee under clause (ii).***

(iv) An organization, whether a civil law corporation or otherwise, is associated with a church or a convention or association of churches if it shares common religious bonds and convictions with that church or convention or association of churches.

***\*\*\****

29 U.S.C. § 1002(33) (emphasis added).

### iii.  <u>The Parties' Arguments</u>

The Court will begin its analysis by briefly reciting the conflicting positions of the parties. <u>See e.g.</u>, <u>Greenlaw v. United States</u>, 554 U.S. 237, 240 (2008) (explaining that "[i]n both civil and criminal cases, in the first instance and on appeal, courts

follow the principle of party presentation, *i.e.*, the parties frame the issues for decision and the courts generally serve as neutral arbiters of matters the parties present.")

### 1. Plaintiff's Position

Plaintiff contends that the Plan fits within the statutory definition of church plan. To arrive at this conclusion, the Court understands her argument to basically proceed as follows:

- **Premise 1**: When Congress amended the ERISA statute in 1980, it intended to expand the definition of church plan *not just* through the addition of §1002(33)(C)(i), *but also through* the addition of §1002(33)(C)(ii), §1002(33)(C)(iii), and §1002(33)(C)(iv).[14]

- **Premise 2**: §1002(33)(C)(ii) operates such that a person who works for a church-affiliated non-profit falls within the scope of §1002(33)(C)(ii)(II). Therefore, it follows that an employee of a church-affiliated non-profit qualifies as an "employee of a church . . ." See §1002(33)(C)(ii).[15]

- **Premise 3**: Since such a person would be considered an "employee of a church" under §1002(33)(C)(ii)(II), it follows, then, that their *employer* must necessarily be "deemed" a "church" under §1002(33)(C)(iii).[16]

- **Deduction**: Since an employee of a church-affiliated non-profit's employer is a "church" for purposes of §1002(33)(C)(ii)(III), it follows that an employee welfare

---

[14] [See e.g., ECF No. 42 at 5 (Plaintiff arguing that, "Defendant's arguments seem to incorrectly suggest (C)(i) is the only pertinent type of plan included with the expansion, even though Congress included other clauses (ii-iv) which provide for additional types of plans as part of the expansion.")

[15] [See e.g., ECF No. 31 at 10 (Plaintiff arguing that,

"[b]ecause a church or association of churches is deemed to be the employer of anyone included under clause (C)(ii), plans for tax-exempt church-affiliates who run their own plans qualify for the ***exemption under the original definition*** as they are "a plan established and maintained. . . for its employees. . . by a church or by a convention or association of churches [(who is deemed the employer of anyone included in (C)(ii))] which is exempt from tax under section 501 of title 26." § 1002 (33)(A).]

[16] See e.g., id.

benefits plan established and maintained by a church-affiliated non-profit necessarily constitutes a "church plan" under §1002(33)(A).

- **Conclusion**: Accordingly, there are three avenues by which a plan can fit the statutory definition of a church plan: "[1] employees of a church (§ (33)(A)); [2] the beneficiaries of church-affiliated PPOs (aka religiously-affiliated pension/welfare benefit boards) (§(33)(C)(i)); and [3] employees of tax-exempt church-affiliates who established and maintain their own plans (§(33)(C)(iii)), (inter alia); are all treated equally under ERISA." [Id. at 3].

### 2. **Defendant's Position**

Defendant rejects Plaintiff's contention that there are three avenues and insists that the statute provides only two avenues: plans must be run by either churches or so-called principal purpose organizations. [See e.g., ECF No. 33 at 8-10]. Defendant makes both textual and doctrinal arguments in support of this claim. Its textual argument is that "there is nothing in the plain text of § 1002(33) that expands the definition of Church Plan to all entities merely associated with a church." [ECF No. 44 at 6]. Thus, Defendant contends that Plaintiff has "reverse-engineered" the text of §1002(33)(C)(ii) and §1002(33)(C)(iii) to generate a result that was not intentional (i.e., allowing the employee welfare benefits plans of all entities merely associated with a church to fall within the statutory definition of church plan). [Id.]

In service of that argument, Defendant argues that to read the statute this way would violate the surplusage canon by rendering §1002(33)(C)(i)'s provision superfluous. [See ECF No. 44 at 8 (Defendant arguing that "[Plaintiff's] proposed interpretation completely eliminates the need for § 1002(33)(C)(i)'s [principal-purpose organization], since under [Plaintiff's] construction, a plan established and

maintained by a church-affiliated non-profit would already be a church plan [i.e., under § 1002(33)(A)]."

### iv.  <u>This Court's Interpretation</u>

The Court begins, as it must, with the text of the statute and reads it according to its plain meaning at the time of enactment.  <u>See</u> <u>Hassan Abbas</u>, 100 F.4th at 283 (citation omitted).  The first question is whether the text is ambiguous.  After careful review, the undersigned finds that the statutory provisions at issue are not ambiguous since they do not permit "more than one reasonable interpretation."  <u>See</u> <u>e.g.</u>, <u>Godin</u>, 534 F.3d at 56 (citation omitted).  Indeed, the plain text only permits one reasonable interpretation, namely that there are only two types of organizations that can qualify for the ERISA church-plan exemption: (1) churches, and (2) principal-purpose organizations.  <u>See</u> §1002(33)(A); §1002(33)(C)(i).  Nowhere does the plain text expand the definition of church plan to encompass all entities or organizations that are merely associated with a church.  <u>See</u> §1002(33).

Indeed, if Congress had wanted to expand the definition to this effect, it is highly unlikely that it would have required the textual gymnastics necessary to land at Plaintiff's conclusion, summarized *supra*.  Although the Court need not apply any canons of construction here because the text is unambiguous, <u>see e.g.</u>, <u>Littlefield v.</u> <u>Mashpee Wampanoag Indian Tribe</u>, 951 F.3d at 40, the Court is struck by the applicability of the late Justice Scalia's oft-cited principle that, "Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions -- it does not, one might say, hide elephants in mouseholes."  <u>Whitman v.</u>

<u>Am. Trucking Ass'ns</u>, 531 U.S. 457, 468 (2001) (citations omitted). Applying this heuristic here, the Court finds Plaintiff's argument that Congress intended to dramatically expand the definition of a church plan with a new, third definitional avenue in such a vague and ancillary way unconvincing.

This reading also makes the most sense in light of the principles of statutory construction endemic to the ERISA context, referenced *supra*. Indeed, the Court must remain mindful that ERISA is a remedial statute that should be construed in favor *protecting the participants* in employee benefit plans, <u>see e.g.</u>, <u>IUE AFL-CIO Pension Fund</u>, 788 F.2d at 127, and the converse principle that "exemptions from ERISA coverage must be confined to their narrow purpose." <u>See e.g.</u>, <u>Alfa Laval, Inc. v. Nichols</u>, 2007 U.S. Dist. LEXIS 23159, at *32 (E.D. Va. Mar. 29, 2007) (citation omitted). Dramatically expanding ERISA's church plan exemption to those organizations that are merely associated with a church would offend both principles.

Finally, this Court's interpretation also comports with an apparent majority of (the few) federal courts that have directly considered arguments that are the same or roughly similar to Plaintiff's. <u>See</u> <u>Roberts v. Life Ins. Co. of N. Am.</u>, 2023 U.S. Dist. LEXIS 226539 (E.D. Ky. Dec. 20, 2023); <u>Casto v. Unum Life Ins. Co. of Am.</u>, 508 F. Supp. 3d 243 (E.D. Tenn. 2020).[17] In <u>Roberts</u>, Eastern District of Kentucky Chief Judge Reeves applied rule statements contained in <u>Stapleton</u>[18] and found that "it is

---

[17] <u>But see</u>, <u>Cruz v. Standard Ins. Co.</u>, 2022 U.S. Dist. LEXIS 244406 (E.D. Ky. May 10, 2022).

[18] Specifically, 581 U.S. at 476, wherein Justice Kagan explained that §1002(33)(C)(i)

clear that two types of plans are exempt under § 1002(33)—plans established by a church or by a convention or association of churches and plans maintained by principal-purpose organizations." 2023 U.S. Dist. LEXIS 226539 at *9 (citation omitted). The court then rejected the plaintiff's proposed construction of the church plan statute -- which is virtually the same as Plaintiff's in this case -- and reasoned that "if Congress intended to define 'church' for purposes of § 1002(33)(A), the addition of § 1002(33)(C)(ii)(II) to the statute would have been an awfully roundabout way of doing so." Id. at *10.

Plaintiff's arguments to the contrary are unavailing. For instance, she argues in part that,

> Ms. Peterson is an employee of NDHCC[I], which is a tax-exempt civil law corporation that is closely affiliated with the Diocese of Worcester and Roman Catholic Church. §1002(33)(C)(ii)(II). NDHCC[I] is associated with a church for purposes of the exemption because it shares common religious bonds and convictions with the Roman Catholic Church where the Church holds NDHCC[I] out as a member of its church and thus can be found in The Official Catholic Directory §1002(33)(C)(iv). Because Ms. Peterson is an individual included as an employee under clause (ii) and because NDHCC[I] is closely affiliated with the Roman Catholic Church for purposes of clause (iv), either the Diocese of Worcester or the Roman Catholic Church is deemed to be her employer for purposes of this exemption. §1002(33)(C)(iii). Thus, NDHCC[I]'s plan is "a plan maintained and established… for its employees… by a church or by a convention or association of churches which is exempt from tax under section 501 of titles 26." §1002(33)(A). Accordingly, NDHCC's plan is a "church plan" that is exempt under ERISA pursuant to 29 U.S.C. § 1003(b)(2).

[ECF No. 31 at 14].

_____

had the effect of creating a second type of plan that should receive church plan exemption status. See also, Medina v. Catholic Health Initiatives, 877 F.3d 1213, 1221 (10th Cir. 2017) ("[a]s [Stapleton] *makes clear*, two types of organization qualify for the church-plan exemption: churches and so-called principal-purpose organizations") (emphasis added).

The required length of such a reading signals that it is likely not assigning to the cited statutory text provisions 'their ordinary, contemporary, common meaning.'" See Pioneer Inv. Servs. Co., 507 U.S. at 388. Turning to the argument's substance, a close review of the various logical leaps adds further credence to the view that Congress only intended there to be *two, narrow* avenues for an organization to qualify as a church plan: being a church or a principal purpose organization. In other words, Congress apparently did not want it to be too easy to qualify as one -- which is an interpretation that follows from an appreciation for the statute's broader purpose. See, e.g., IUE AFL-CIO Pension Fund, 788 F.2d at 127 (explaining that ERISA is a "remedial" statute which should be "liberally construed *in favor of protecting the participants in* employee benefit plans.")

In Casto, the court rejected the notion of a third way that ran by way of §1002(33)(C)(ii)(II). 508 F. Supp. 3d at 246 (concluding that "[t]here is no other addition to the definition of church plan that would expand it to all entities merely associated with a church.") Further, the court in Casto convincingly speculated that §1002(33)(C)(ii)(II)'s true purpose may have been to just "expand ***those who can benefit*** from a church plan" giving an example of how the provision "would make a plan ***administered by the Catholic Church*** for employees of an associated hospital a church plan. That plan would be administered by a church under § 1002(33)(C)(i) for the employees of a church-associated entity under § 1002(33)(C)(ii)(II)" Id. at 248 (emphasis added). While this Court need not decide §1002(33)(C)(ii)(II)'s legislative purpose, this plain explanation makes much more sense than the one Plaintiff urges.

v.    **The Bottom Line**

Given this Court's interpretation of the statute, for the Plan to be a church

plan, NDHCCI would need to be *either* a church or a principal-purpose organization.

Both parties agree that it is neither.  Therefore, the Court concludes that the Plan is

not a church plan, and it is therefore covered by ERISA.  According to its roadmap,

the Court now turns to issues of ERISA preemption.

c.    **Step Three: Are Plaintiff's Claims Preempted?**

The Court need not and will not wade deep into the waters of ERISA

preemption here since the parties agree that if the Plan is covered by ERISA -- and

this Court has just determined that it is -- all of Plaintiff's claims are preempted.  [See

e.g., ECF No. 42 at 2-3 (Plaintiff stating that she "acknowledges and does not dispute

that the law of the First Circuit is that Plaintiff's state law claims and remedies would

be preempted as ERISA would be the exclusive enforcement mechanism")].  Indeed,

the Court agrees that each of Plaintiff's pending claims are now preempted.[19]  The

Court thus continues on to the final stop on its roadmap, where it will determine

whether to dismiss the case, and what effect this might have on the Court's

jurisdiction.

d.    **Step Four: Should the Court Dismiss Plaintiff's Claims?  And, if so,
Should the Dismissal be With or Without Prejudice?**

Plaintiff's complaint is made up solely of state law claims.  Plaintiff has asked

for permission to amend her complaint to allege ERISA claims.  [ECF No. 42 at 3].

---

[19] Since the issue of which precise form of ERISA preemption applies was not directly briefed
and because the parties agree that the claim is preempted in any event, the Court need not and
will not reach this sub-issue.  See e.g., Greenlaw, 554 U.S. at 240.

Defendant agrees with this request.  [ECF No. 33 at 11 ("Defendant has no objection should [Plaintiff] move to amend her Complaint to state a claim for benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).")].  However, the Plaintiff has not filed a motion seeking leave to amend nor has she tendered a proposed amended complaint.  Thus, this Court is in a similar position as the <u>Roberts</u> Court after it found that the plaintiff's state law ERISA claims were preempted.  2023 U.S. Dist. LEXIS 226539 at *15 (observing at this stage that "plaintiff has neither filed a motion seeking leave to amend nor has she tendered a proposed amended complaint. Granting the requested relief [of leave to amend] would leave this matter in the odd position of being without an operative pleading and thus without a claim over which this Court could exercise jurisdiction).  Here, too, granting Plaintiff's requested relief would leave this Court without a pending claim over which it could potentially exercise.  Accordingly, the matter will be **<u>DISMISSED</u>**, **without prejudice** to Peterson's ability to file a **<u>new action</u>** asserting her claims under ERISA. <u>See</u> <u>id.</u>

## VII.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant's summary judgment motion is **<u>GRANTED</u>**.  Plaintiff's motion for partial summary judgment [ECF No. 26] is **<u>DENIED</u>**.

**SO ORDERED.**                                        <u>/s/ Margaret R. Guzman</u>
                                                               MARGARET R. GUZMAN
March 31, 2025                                          United States District Judge